RICHARD ROE, Casual Ejector, and JESSE A. WRIGHT, Tenant in Possession, defendant below, plaintiff in error, *vs.* JOHN DOE, upon the demise of the Town of Seaford, a corporation of the State of Delaware, Trustee of Boachim Burial Ground, plaintiff below, defendant in error.

1. EJECTMENT—ISSUES—CONSENT RULE.

Where a proper consent rule is entered by a defendant in ejectment, defendant thereby confesses the fictitious lease averred by the real plaintiff, the entry of the fictitious casual ejector, and ouster by the latter of the fictitious lessee of the real plaintiff, so that such averments need not be proved; the only question remaining to be tried being the title to the land mentioned in the declaration and in the rule.

2. EJECTMENT—TITLE REQUIRED.

In ejectment, plaintiff must prevail on the strength of his own title, and not on the weakness of or a defect in the title of his adversary.

3.  CHARITIES—TRUSTEES—PUBLIC CHARITY.

Where an owner of land conveyed the same to seven trustees, to be used as a burying ground, and after the death of the last surviving trustee, without another being appointed or elected, the Legislature passed Act March 15, 1909 (25 *Del. Laws, c.* 197), providing that all the estate vested in the trustees under such deed should be vested in defendant town to carry out the provisions of the trust the legal title to the land vested in the town, and not in the personal representative of deceased's surviving trustee; the General Assembly having power to transfer the legal title to land held in trust for public purposes from one body or set of persons holding title to another, or to a particular corporation.

4.  CHARITIES—TRUSTEES—APPOINTMENT OF SUCCESSORS—CONVEYANCE— NECESSITY.

Where, after the death of a sole surviving trustee, to whom land had been conveyed for cemetery purposes, the Legislature, by Act March 15, 1909 (25 *Del. Laws, c.* 197), vested the title in the town no actual conveyance of the property was essential.

5.  CHARITIES—TRUST FOR TOWN—TRUSTEES—POWER TO HOLD TITLE.

Seaford Town Charter (23 *Del. Laws, c.* 194) § 6, providing that the town may purchase and hold lands, tenements, and hereditaments in fee simple or otherwise, and may do all other things which a body corporate may lawfully do to carry out the objects of the act, conferred on the town legal capacity to take title to property located in the town, and previously conveyed to trustees, since deceased, for a public burying ground.

6.  CHARITIES—TRUSTEES—MUNICIPAL CORPORATION—AUTHORITY.

Act March 15, 1909 (25 *Del. Laws, c.* 197), providing that all title previously vested in trustees under a deed to certain real estate for cemetery purposes shall be vested in the town of S. to carry out the provisions of the trust, having been duly passed, constituted an amendment of the town's charter, so as to confer power on the town to take title to the property, if such power did not previously exist.

7.  EVIDENCE—DOCUMENTARY EVIDENCE—JUDICIAL RECORD.

Where a town, having succeeded to the title of certain cemetery property, conveyed in trust for cemetery purposes, brought ejectment to recover a part of the land from a trespasser, the record of the Court of Chancery, showing the appointment of the town as trustee, was admissible.

8.  CHARITIES—DEATH OF TRUSTEE—HOLDER OF LEGAL TITLE—POWERS.

Where, after the death of a sole surviving trustee of land conveyed for cemetery purposes, the legal title became vested in the town by Act March 15, 1909 (25 *Del. Laws, c.* 197), in trust, the town had power to maintain ejectment against a trespasser, whether authorized to act as trustee or not.

9.  CHARITIES—TRUSTEES—QUALIFICATION—MUNICIPAL CORPORATION.

A municipal corporation was not disqualified to act as trustee of land conveyed in trust for cemetery purposes, under the rule that there is no inherent disqualification in a municipal corporation to execute a public charitable trust of a character not repugnant to its charter or general purposes.

(*June* 20, 1911.)

CURTIS, Chancellor, PENNEWILL, Chief Justice, and WOOL-LEY, J., sitting.

*Robert C. White, James M. Tunnell* and *Daniel J. Layton, Jr.,* for plaintiff in error.

*Whiley* and *Jones* and *Charles W. Cullen*, for defendant in error.

Supreme Court, January Term, 1911.

WRIT OF ERROR to Superior Court, for Sussex County (No. 5, January Term, 1911)—Action by John Doe, on the demise of the Town of Seaford, a corporation and trustee of Boachim Burial Ground, against Richard Roe, casual ejector, and Jesse A. Wright, tenant in possession (No. 11 October Term, 1909). Judgment for plaintiff (1 *Boyce* 216). Affirmed. Thef acts and questions presented appear in the opinion of the court.

CURTIS, Chancellor, delivering the opinion of the court:

The action in the court below was one of ejectment brought by the Town of Seaford, a municipal corporation, as trustee of Boachim Burial Ground, to recover possession of the burial ground in the Town of Seaford. The pleadings are not in the record filed in the Supreme Court, but it is to be assumed that they were in the usual and proper form in such cases, including the consent rule. To prove its case the plaintiff put in evidence a deed from James Conwell to Henry Little and six other persons, dated April 29, 1818, duly recorded, whereby a lot of land in Seaford was conveyed to the grantees, and to their successors to be elected as therein mentioned, as trustees in trust for certain purposes declared, viz.: (1) For a public burial ground and (2) for building thereon a house for worship, to be erected by contributions to be received. Authority was given to the trustees to sell and convey the church building, when erected, and the ground upon which it should stand, and the disposition of the proceeds of sale was provided for. Vacancies in the trustees were to be filled by the "subscribers," meaning evidently those persons who should contribute to the cost of erecting the meeting house. From plots introduced in evidence, and the testimony adduced, as well as by the statements of counsel, it appears that the meeting house and the land on which it stands was sold and conveyed some years prior to 1909, and is not now involved in this action, the premises claimed by the lessor of the fictitious plaintiff in the action being

only the remaining portion of the land conveyed by James Conwell, the part used as a public burial ground, or cemetery.

By an act approved March 15, 1909 (*Vol.* 25, *c.* 197, *Laws of Delaware*) the General Assembly enacted, as follows:

"That all the estate, right, title, power and authority vested in the trustees under and by a deed of trust * * * from James Conwell to Henry Little and others, trustees and their successors in trust for a public burial ground, be and the same is hereby vested in the Town of Seaford, Sussex County and State of Delaware for the purpose of carrying out the provisions of said trust."

The preamble to the act recited that the original trustees were long since dead; that no new trustees could be legally elected under the deed of trust; that no one had authority to protect the burial ground from desecration; and that the Town of Seaford had desired authority to assume control of the cemetery.

The plaintiff below further offered in evidence the record of the appointment by the Chancellor of the Town of Seaford as trustee of the burial ground, and admission of the record was objected to by the defendant on the ground that the Town of Seaford was not competent to act as trustee, though the defendant's attorney expressly admitted that the appointment had been made. After argument the court below admitted the record showing the petition of the Town of Seaford to be appointed trustee, and its appointment by the Chancellor. Exception having been taken to the admission of this evidence, it is assigned as error, being the third assignment of error. The record of the Court of Chancery is not part of the record filed in this court.

No evidence was offered by the defendant. His motion for binding instructions to the jury for a verdict for the defendant was refused; a motion of the plaintiff for binding instructions for a verdict for the plaintiff was granted; and pursuant thereto a verdict for the plaintiff was rendered that the defendant was guilty of the trespass in ejectment. A bill of exceptions having been allowed, the case is before the court on the writ of error, there being three assignments of error: (1) In not directing a verdict for the defendant; (2) in directing a verdict for the plaintiff; (3) in

admitting the record of the appointment of the town by the Chancellor to be trustee.

[1, 2] Assuming that the proper pleadings were had in the court below, by the entry of the consent rule the defendant confessed the fictitious lease avererd by the real plaintiff, the Town of Seaford, in its declaration, the entry of the fictitious casual ejector, and the ouster by the latter of the fictitious lessee of the real plaintiff, and therefore as these averments and incidents to the suit need not have been proved at the trial, the only question remaining to be tried was that of the title to the land mentioned in the declaration and in the consent rule. *Woolley on Delaware Practice*, § 1599; *Armstrong's Lessee v. Simmons*, 3 *Harr.* 342 (344). In ejectment the plaintiff must prevail on the strength of his own title, and not upon the weakness or defect in the claim of his adversary.

[3] In this action of ejectment, then, the sole question for decision is, did the Town of Seaford have title to the land? By the deed of James Conwell, made in 1818, the title became vested in the seven grantees, in trust, and all of them being deceased and no one having been appointed or elected as their successors, the legal title to the land would have descended or been cast by operation of law upon the representative of the last surviving trustee. By the Act of Assembly of 1909 the legal title to the land was clearly and specifically vested in the Town of Seaford, as a municipal corporation, and if the town had legal power to take title to land, the effect of the statute was to divest the title of the representatives of the deceased trustees, whoever they were and however they may have acquired title, without the need of a conveyance from such representatives.

[4] There can be no question but that the General Assembly may by an act so transfer the legal title to land held in trust for public purposes from one body or set of persons holding the legal title to another body or set of persons, or to a particular corporation, to hold the land for the same purposes and under the same trusts, and in such cases an actual conveyance of the legal title is unnecessary. So here, the legal title to the land was by the act of 1909 transferred from a *quasi* public body, the original

25 Del.]     Roe and Wright vs. Town of Seaford.     353

Opinion.

trustees, and the representative of the surviving trustee, to another body, a municipal corporation, if the latter had power to take the title. Whether the town had authority to administer the trust is another question to be considered later.

[5] The Town of Seaford has power to take and hold the legal title to land. By its charter of 1905 (23 *Del. Laws, c.* 194), replacing prior acts, the corporation was, by *section* 6, empowered, among other things, as follows:

" *   *   *   And may purchase, take, hold, and enjoy lands, tenements and hereditaments in fee simple or otherwise, and also goods and chattels, rights and credits, alien, grant, devise and dispose of the same as they may deem proper, and may do all other things which a body politic and corporate may lawfully do to carry out and effect the objects and purposes of this act."

[6] This provision of *section* 6 of the charter, above quoted, is broad enough to give to the town the legal capacity to take the legal title cast upon it by the act of 1909 relating to the cemetery. But even if it did not, the act of 1909 operated to amend the charter of the town to give it power to take the title to the land in question, though it was not enacted specifically as an amendment, the act of 1909 having been passed by the constitutional proportion of the members of each house. Furthermore, by the act approved March 29, 1905 (*Section* 1, *c.* 197, *Vol.* 23, *Laws of Delaware*), the appointment of the Town of Seaford by the Chancellor to be trustee of the Boachim Burial Ground, the survivng trustee thereof having theretofore died, vested in the new trustee the legal title to the trust property without a conveyance thereof by the representatives of the surviving trustee, provided the Town of Seaford was capable of acting as such trustee.     [7] The record of the Court of Chancery showing that the Chancellor had appointed the Town of Seaford to be trustee of the land in question was surely admissible in evidence to show the right of the plaintiff to maintain the action of ejectment. It need not, of course, be considered whether the order of the Chancellor was necessary or not for the purpose. Therefore, as the legal title to the land in question was by the statutes in question actually vested in the Town of Seaford, it had a right to maintain the ejectment, and the

23

only point at issue in the cause, that of the legal title of the lessor of the plaintiff, was determined in its favor. The plaintiff below was entitled to and obtained a verdict upon the strength of its own title. There was no error, then, in the refusal of the court to instruct the jury to bring in a verdict for the defendant, or in ordering a verdict for the plaintiff below.

The plaintiff in error contended, however, that though appointed by the act of 1909 to be trustee, the Town of Seaford was not by that or any other act, empowered to act as trustee. This was urged presumably as a reason why the town had not the right to maintain the action of ejectment. But the consequence does not follow.

It appears from the record that the defendant, without authority or right, and as a trespasser, encroached upon the ancient burial ground, occupied the part in question for commercial purposes by erecting thereon an engine room, pump room and ice storage house, and thereby desecrated it, and subjected it to a use wholly inconsistent with the general purpose for which the land was dedicated by the original grantor. Under these circumstances it was the duty of the town, as the holder of the legal title, to protect the trust property.

[8] Where, upon the death of a sole or surviving trustee, the legal title to the trust property is cast upon the representatives of the deceased trustee, though the latter succeeds to the title only and not to the office, it is his duty to protect and preserve the trust property until there be a new trustee. 1 *Perry on Trusts,* § 344. Therefore, even if the Town of Seaford was not competent to execute the trust, it had the right and power, and perhaps the duty to bring and maintain the suit to protect and preserve the trust property from the unlawful encroachment of the defendant thereon, and his injurious occupation thereof. Furthermore, in bringing the suit the Town of Seaford was directly carrying out the manifest purpose of the act of 1909, by which the legal title to the cemetery was vested in the town as trustee, in order that it might protect the cemetery from desecration, and terminate the occupation of it for commercial purposes. That this was the purpose of the act is quite clearly implied from the preamble to it.

It is concluded, then, that by necessary implication the power to act as trustee, at least to the extent of protecting the trust property, was conferred on the Town of Seaford. But even broader powers were undoubtedly conferred upon the Town of Seaford by the act of 1909, and full authority and duty to administer the trust by it conferred and imposed upon the town.

[9] There is no inherent disqualification or incompetency in a municipal corporation as such to execute and administer a public charitable trust of a character not repugnant to, or inconsistent with, its charter, or general purposes. *Vidal v. Girard's Ex'r*, 2 *How.* 127, 11 *L. Ed.* 205. The trust respecting the land in question is a public charitable trust (*Trustees of New Castle Common v. Megginson*, 1 *Boyce* (Del.) 361, 77 *Atl.* 565); and the execution of it is not repugnant to, or inconsistent with, any provision of the charter of the Town of Seaford, or any purpose for which the charter was obtained, but on the contrary is inaccord therewith.

The object of the act of 1909 was expressed in its title, "An act constituting the Town of Seaford trustee for the Boachim Burial Ground," and by it the legal title to the land was vested in the town "for the purpose of carrying out the provisions of said trust." Such words in the clearest manner conferred the power and imposed the duty on the corporation to fully execute the trust created by the deed of James Conwell, and the bringing of the action of ejectment was a proper exercise of the powers conferred upon it, to terminate thereby the unlawful encroachment by the defendant upon the trust property. To act as trustee of the burial ground was a right given and duty imposed by the statute, and by necessary implication power was conferred on the town to make the right available and to enable it to discharge the duty so imposed. *Sutherland on Statutory Construction*, 343.

Inasmuch, therefore, as the plaintiff in the ejectment had the legal title to the land in question, had a right to bring the suit and was vested with power to execute the trust respecting the land, the court below was right (1) in admitting evidence of the appointment of the Town of Seaford as trustee by the Chancellor; (2)

Opinion.

in refusing to direct a verdict for the defendant; and (3) in directing a verdict for the plaintiff.

The judgment of the court below is affirmed.